UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

PT. BANK NEGARA INDONESIA (PERSERO) TBK.,

                    Plaintiff,

         v.

BARCLAYS BANK PLC and BARCLAYS CAPITAL INC.,

                    Defendants.

---------------------------------------------------------------x

Case No. 10 Civ. 8851 (LBS)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Lance Croffoot-Suede
Linda Regis-Hallinan
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000 Telephone
(212) 903-9100 Facsimile
lance.croffoot-suede@linklaters.com
linda.regis-hallinan@linklaters.com

Counsel for Defendants Barclays Bank PLC and Barclays Capital Inc.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ........................................................................................................................1

I.     BNI'S SECTION 10(b) CLAIM FAILS ...................................................................1

        A.     Defendants Made No Material Misrepresentations .................................1

        B.     BNI Has Failed To Allege a Duty To Disclose ........................................2

        C.     BNI Has Not Alleged Reasonable Reliance ............................................3

        D.     BNI Has Failed To Plead Scienter ...........................................................4

              1.     BNI Has Not Adequately Alleged That Defendants Knew Any Information Regarding a Successor .............................................4

              2.     BNI Has Failed to Allege Motive .................................................5

              3.     BNI Has Failed To Establish Recklessness ...................................6

II.     PLAINTIFF FAILS TO ALLEGE ANY FRAUD CLAIMS ......................................7

        A.     BNI Fails To Allege Any Facts Demonstrating That Barclays or BCI Possessed Peculiar Knowledge ..................................................................7

        B.     BNI Fails to Allege the Required Elements of Fraud In Connection With the Monthly Statements and Alleged Lack of Notice As To Successors ..........................................................................................7

III.    UNDER BINDING CASE LAW, THE MARTIN ACT PREEMPTS BNI'S NEGLIGENT MISREPRESENTATION CLAIM ..........................................8

IV.    THE COURT SHOULD DISMISS BNI'S BREACH OF CONTRACT CLAIMS ....................................................................................................................9

V.     BNI'S DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED ...............9

CONCLUSION .........................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

Page

Affiliated Ute Citizens of Utah v. United States,
406 U.S. 128 (1972)..........................................................................................................3, 4

Castellano v. Young & Rubicam, Inc.,
257 F.3d 171 (2d Cir. 2001)...................................................................................................8

First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004)...................................................................................................4

Giant Grp., Ltd. v. Arthur Andersen, LLP,
770 N.Y.S.2d 291 (1st Dep't 2003) .......................................................................................8

Info. Res., Inc. v. Dun & Bradstreet Corp.,
127 F. Supp. 2d 411 (S.D.N.Y. 2000)....................................................................................9

Kalnit v. Eichler,
264 F.3d 131 (2d Cir. 2001).................................................................................................6, 7

In re NovaGold Res. Inc. Sec. Litig.,
629 F. Supp. 2d 272 (S.D.N.Y. 2009)....................................................................................3

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007)............................................................................................................5, 6

Thesling v. Bioenvision, Inc.,
374 F. App'x 141 (2d Cir. 2010) ...........................................................................................2

### STATUTES

15 U.S.C. § 78o(g) ....................................................................................................................5

28 U.S.C. § 1367(c) ..............................................................................................................9, 10

BNI ignores market reality, the fundamental nature of a credit derivative transaction, and the documents governing the credit linked note at issue here (the "CLN") – all of which establish that <u>no</u> disclosures or representations were made or to be made regarding any Reference Entity. And, BNI ignores that it expressly agreed in the Representation Letter that (a) the terms of the CLN were set forth exclusively in the offering documents and (b) BNI was not relying on Barclays for any facts about the Reference Entity. BNI is a sophisticated entity that chose to purchase the CLN and assume the associated risks with its eyes open. That BNI now wishes to hold Defendants responsible for BNI's independent investment decision, made in accordance with the Representation Letter it signed, directly contradicts the terms of its agreement with Barclays. BNI's First Amended Complaint ("Amended Complaint") cannot survive Defendants' motion to dismiss.

## ARGUMENT[1]

### I. BNI'S SECTION 10(b) CLAIM FAILS

BNI fails to allege any facts in its Amended Complaint to sustain the required elements of its Section 10(b) claim. BNI's belated attempt to establish in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint, filed June 13, 2011 (the "Opposition Brief"), an affirmative material misrepresentation or a duty to disclose on the part of Defendants, or any basis for scienter, is to no avail. The CLN's terms and BNI's own Representation Letter defeat any purported reasonable reliance.

#### A. <u>Defendants Made No Material Misrepresentations</u>

BNI repeatedly asserts that the alleged statement by Jonathan Lum that the CLN would be linked to Verizon "only" was a material misstatement. Opp. Br. at 9, 11, 13, 15, 18. But BNI

---

[1] Capitalized terms are defined in the Memorandum of Law in Support of Defendants' Motion to Dismiss the First Amended Complaint, filed May 6, 2011 (the "Motion").

1

exaggerates the allegation that it cites in the Amended Complaint – BNI does not allege that Mr. Lum represented that Verizon was the "only" Reference Entity. Am. Compl. ¶ 51. Rather, paragraph 51 of Plaintiff's Amended Complaint alleges that Mr. Lum said in an early conversation that "the Notes would be linked to the credit of Verizon as the Reference Entity." Am. Compl. ¶ 51. That comment was a true statement. Contrary to BNI's assertion in its Opposition Brief, this initial communication was not a material misstatement.

Recognizing that it has failed to allege any affirmative misrepresentation in its Amended Complaint, Plaintiff newly cites to page five of the IM to assert that Defendants misrepresented "that they had issued no misleading information." Opp. Br. at 5, 9. BNI's argument is nonsensical. The IM states that the Issuer confirms that the information contained or incorporated in the Information Memorandum "is true and accurate in all material respects and is not misleading." IM at 5. The IM itself emphasizes that Barclays and BCI made no representation as to "any Reference Entity or any Reference Obligation or the credit quality thereof." [2] IM at 22. The IM was true and accurate and there are no facts alleged by BNI that indicate otherwise.

B.  BNI Has Failed To Allege a Duty To Disclose

BNI has also failed to establish any basis for a duty to make further disclosures. See Thesling v. Bioenvision, Inc., 374 F. App'x 141, 143 (2d Cir. 2010) ("[I]t is by now axiomatic that a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact . . . [and] [s]ilence, absent a duty to disclose, is not misleading.") (internal citations omitted). Without either an affirmative and material

---

[2]  The CDDs, which provide the market standard representations for all credit derivative transactions, also make clear that among the numerous representations that are made in connection with other aspects of a transaction, neither party makes "any representations whatsoever" regarding the Reference Entity. CDD § 9.1(a).

2

misstatement, or a duty to disclose allegedly omitted information, Plaintiff's purported Section 10(b) claim fails at the outset.

Even if BNI had adequately alleged that Mr. Lum made a misrepresentation in his initial communication to BNI (and it did not), by BNI's own admission, Mr. Lum then provided the August 18, 2006 Term Sheet to BNI that clearly disclosed that the Reference Entity was Verizon "and any Successors." Am. Compl. ¶¶ 53-54. That fully discharged any possible duty to correct the purported misrepresentation.[3] See In re NovaGold Res. Inc. Sec. Litig., 629 F. Supp. 2d 272, 301 (S.D.N.Y. 2009).

C.     BNI Has Not Alleged Reasonable Reliance

BNI quotes some of the extensive discussion in the IM that disclosed to BNI that Defendants would not provide any information regarding the Reference Entity, "Verizon and any Successors."[4] Opp. Br. at 13-15. And BNI signed a Representation Letter, in which it agreed that it was not relying on anything – other than the terms provided in the Offering Documentation. Rep. Letter ¶¶ 6-7, 10. This refutes BNI's assertion that it reasonably relied on Defendants for information about the purported plans of Verizon at the time of the CLN sale to later create Idearc.

BNI refers in passing to a presumption of reliance as to the alleged omission of a material fact by one with a duty to disclose. Opp. Br. at 16 (citing Affiliated Ute Citizens of Utah v.

---

[3]     BNI's assertion that the phrase "Verizon and any Successors" is somehow vague, Opp. Br. at 16, is without merit. To the contrary, "Verizon and any Successors" is a market term of art used to accurately describe the terms of the transaction. Indeed, had Reference Entity been more specifically defined, it would have violated the key term of the IM that there would be no information or representations made as to any Reference Entity.

[4]     BNI's assertion that the Defendants had no obligation to disclose any information regarding a Reference Entity only after the Note was issued, Opp. Br. at 15, is wrong. BNI ignores the other provisions of the IM, which emphasize that Defendants do not make any representation as to any Reference Entity, and that the purchasers of Notes are solely responsible for making an appraisal of the financial condition and prospects of the Reference Entity, Verizon and any Successors. IM at 22, 14-15; see also CDD § 9.1(a). The disclosure that BNI cites makes clear that Defendants would never have an obligation to provide information regarding the Reference Entity.

3

United States, 406 U.S. 128, 153-54 (1972)). But, as set forth above and in Defendants' Motion, BNI has failed to establish a duty to disclose. Moreover, the deal documents and BNI's own Representation Letter, which made clear that BNI was not entitled to rely and was not relying on Barclays, rebut any presumption.

D. BNI Has Failed To Plead Scienter

1. BNI Has Not Adequately Alleged That Defendants Knew Any Information Regarding a Successor

The crux of BNI's argument is that when BNI bought the CLN, Defendants knew that a Successor would be created and that it would be burdened with "a tremendous amount of debt." Opp. Br. at 1, 5, 16, 20-21. But BNI has not alleged facts supporting this argument of knowledge by Defendants.

BNI does not allege any facts establishing that Defendants at the time of the CLN sale knew that a Successor would result from Verizon's planned divestiture. All BNI's allegations in this regard are either conclusory, or impermissibly based upon information and belief. First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 179 (2d Cir. 2004) (even when a plaintiff alleges that matters are peculiarly within a defendant's knowledge, "this does not mean that those matters may be pled lacking any detail at all").

In its Opposition Brief, BNI still fails to provide any facts to support the allegations that Barclays or BCI knew that a Successor would emerge from Verizon's planned spin-off. BNI's reference in footnote five of its Opposition Brief to the SEC filings, for instance, does not demonstrate Defendants' knowledge at any particular time, and certainly not any earlier than the market and BNI knew from public disclosures that the Idearc spin-off did create a Successor as

4

defined by the CDDs.[5]

BNI also argues that Defendants were involved in planning, or were insiders to, Verizon's spin-off. Opp. Br. at 2, 3, 17. But BNI has alleged no supporting facts. Rather, BNI alleges only that Barclays was an Idearc lender and acted as a co-documentation agent as of November 2006, months after the sale of the CLN. Am. Compl. ¶¶ 79-80. Moreover, even if Barclays investment bankers had been involved in planning the spin-off, Barclays would have been legally required to safeguard its confidential investment banking activities from disclosure to the public, including from its own traders and sales personnel, by limiting dissemination of information about such activities. See 15 U.S.C. § 78o(g) (requiring brokers or dealers to have and enforce written policies and procedures reasonably designed to prevent the flow of material, non-public information). BNI has not alleged that any information barrier was breached and surely the securities laws do not require banks to breach their confidentiality obligations to benefit a counterparty that, as here, was expressly warned that the bank would not do so. Its entire theory of this case ignores core, well-known constraints – first and foremost, in credit derivative transactions and second, in non-public investment banking activities.

2. BNI Has Failed to Allege Motive

BNI alleges that Defendants' motive was to "create a scenario where they would reduce or even eliminate defendants' repayment obligation."[6] Op. Br. at 19. Even if true, such a

---

[5] Rather, reference to the SEC filings only supports Defendants' position that there was public information available to BNI regarding the possibility of a spin-off, as well as information that contemplated the takeover of debt in connection with such spin-off. Further, no one, including Barclays, BCI or BNI, could know if there would be a Successor, as that term is defined, until a Succession Event actually occurred and its details were certain.

[6] BNI also attempts to establish motive by arguing that "[i]t is quite possible that defendants sold other Notes under the Programme or other instruments to cover their exposure to Verizon and Idearc." Opp. Br. at 22. BNI's own wording makes clear that it has no facts to support such conjecture. BNI's hedging theory is pure speculation and cannot survive this motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007) (the inference of scienter must be cogent and compelling).

generalized profit motive is insufficient as a matter of law.[7] Kalnit v. Eichler, 264 F.3d 131, 140 (2d Cir. 2001) ("a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter").

3.  BNI Has Failed To Establish Recklessness

BNI admits, as it must, Opp. Br. at 20, that scienter may be established by recklessness only where the plaintiff alleges "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Kalnit, 264 F.3d at 142. Defendants' conduct can hardly be characterized as "an extreme departure from the standards of ordinary care." To the contrary, Defendants used market standard terms and definitions in connection with the CLN. Barclays followed market standard procedures in including clear disclaimers that no information would be disclosed regarding the Reference Entity. Likewise, Barclays follows market standard practices of enforcing the appropriate information barriers between its investment banking division and the public trading division (while expressly warning BNI that it would do so), such that if the investment banking division had any information regarding a possible Successor, which BNI has not shown, that information would not pass to the public trading division with which BNI dealt.

Nor has BNI shown that "the danger was either known to the defendant or so obvious that the defendant must have been aware of it," as it must to establish recklessness. Kalnit, 264 F.3d

---

[7] Plaintiff glosses over the fact that Barclays, at the time of Idearc's bankruptcy, was owed $83 million. Opp. Br. at 22. When considering whether the facts as pleaded "give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." Tellabs. 551 U.S. at 323 (emphasis added). Where (1) all risks and terms were expressly disclosed and agreed to by BNI, and (2) Barclays itself faced direct, significant harm from Idearc's credit performance, there are obvious opposing inferences that defeat Plaintiff's hollow allegations of deceit. At all times, Defendants either expressly informed BNI of the risks and terms it was agreeing to, or explicitly stated in detail what information Defendants would not disclose. Such circumstances cannot in any way give rise to an "intent to deceive, manipulate, or defraud." Id. at 313, 319.

6

at 142. BNI simply jumps to the conclusion that Defendants knew that a Succession Event would occur that would result in a Successor and that this would harm BNI as a counterparty. But everyone – including BNI – was aware that a Succession Event was possible. BNI failed to allege any facts to show that Defendants knew there would be a Successor, much less one over-burdened by debt. Further, there was no danger of misleading BNI because BNI knew that Defendants were not providing information regarding the Reference Entity.

## II. PLAINTIFF FAILS TO ALLEGE ANY FRAUD CLAIMS

The Court should exercise supplemental jurisdiction and dismiss BNI's state fraud claims on their merits.

### A. BNI Fails To Allege Any Facts Demonstrating That Barclays or BCI Possessed Peculiar Knowledge

BNI's argument that the "peculiar knowledge" doctrine can save its fraud in the inducement claim is unavailing. Opp. Br. at 23-24. As shown above, BNI has failed to allege any facts demonstrating that Barclays or BCI knew that any Verizon spin-off entity would become a Successor, much less peculiar knowledge.

Even if BNI had adequately alleged that Defendants had peculiar knowledge, it cannot escape the explicit agreement between the parties that BNI would get no information regarding the topic of the Reference Entity, Verizon and any Successors. BNI cannot now complain that it received no information regarding Verizon's plans for its spin-off and a potential Successor when in fact, the agreement between the parties specifically made clear that BNI would not receive such information.

### B. BNI Fails to Allege the Required Elements of Fraud In Connection With the Monthly Statements and Alleged Lack of Notice As To Successors

BNI does not dispute that the pricing indicated on the courtesy monthly valuation statements was accurate or that these statements solely concern pricing and do not purport to

7

explain the underlying CLN terms. Nevertheless, BNI continues to assert that the monthly statements are actionable misrepresentations because they did not disclose the Succession Event or change in Reference Entity. Opp. Br. at 26-27. BNI's bare assertion of a misrepresentation fails to establish the required elements of a fraud claim. Motion at 31-32.

Similarly, BNI's allegation that Defendants did not provide timely notice of the Succession Event and Successor Reference Entities, Opp. Br. at 27, also does not satisfy the required elements of fraud. For example, BNI repeats in its Opposition Brief its conclusory allegation that scienter is established "because defendants knowingly continued to mislead BNI by not informing it of their Successor determination." Id. Such a bare assertion does not support the required showing of willful deception or extreme recklessness. Giant Grp., Ltd. v. Arthur Andersen, LLP, 770 N.Y.S.2d 291, 292 (1st Dep't 2003) ("[P]laintiff's allegations of scienter are not pleaded with the requisite particularity, but are conclusory, failing to set forth facts from which scienter may be inferred."). Moreover, BNI has failed to show that its fraud claim is independent of its breach of contract claim. Any attempts by BNI to amend their deficient claims for a third time would be futile.

### III.   UNDER BINDING CASE LAW, THE MARTIN ACT PREEMPTS BNI'S NEGLIGENT MISREPRESENTATION CLAIM

The Second Circuit has squarely held that the Martin Act preempts common law non-fraud claims, such as negligent misrepresentation. Castellano v. Young & Rubicam, Inc., 257 F.3d 171 (2d Cir. 2001). This dooms BNI's negligent misrepresentation claim.

In addition, for the reasons set forth in Defendants' Motion, BNI has failed to adequately allege a claim for negligent misrepresentation. Motion at 34-37. BNI and Defendants, as counterparties to an arm's-length transaction, were not in any special relationship that triggered

8

some heightened disclosure obligation, notwithstanding BNI's bare claims concerning the parties' "long-standing relationship." Opp. Br. at 29; Motion at 36-37.

## IV. THE COURT SHOULD DISMISS BNI'S BREACH OF CONTRACT CLAIMS

Defendants do not concede that BNI has stated a breach of contract claim.[8] To determine the adequacy of BNI's breach of contract claims would require an analysis under UK law, which Defendants have not attempted to undertake. Rather, Defendants assert that this Court should decline to exercise supplemental jurisdiction over BNI's breach of contract claims, pursuant to Sections 1367(c)(1) and (3).[9] Motion at 37-40.

BNI's argument that the contract claims "are inextricably related to New York" is wrong and ignores the fact that the parties expressly chose English law to govern their contracts and settled the transaction through BNI's London Branch and Euroclear. BNI's contract claims therefore require an analysis of English law involving complex facts and derivative relationships. Motion at 37-40. An English Court should decide, and this Court should decline to exercise supplemental jurisdiction over, BNI's contract claims.[10]

## V. BNI'S DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED

BNI admits that the CLN will not mature until September 20, 2011. Opp. Br. at 32. Accordingly, BNI's declaratory judgment claim is not ripe. In requesting that the Court dismiss

---

[8] To the contrary, Defendants pointed out in their Motion that BNI bases its contract claims on a misreading of the relevant provisions. Motion at 12-13. BNI does not dispute this in its Opposition Brief.

[9] BNI argues that 1367(c)(1) does not apply here, as the statute does not define "State" to include "foreign" but they are incorrect and case law holds otherwise. See Info. Res., Inc. v. Dun & Bradstreet Corp., 127 F. Supp. 2d 411, 417-18 (S.D.N.Y. 2000) (citing to 1367(c)(1) and declining to exercise supplemental jurisdiction when claims present novel and complex issues of foreign law).

[10] BNI came into this Court based on its Section 10(b) claim – it could not have filed a standalone UK contract claim based on diversity jurisdiction. Even if there was some basis for BNI's Section 10(b) claim, which there is not, the Court should still decline supplemental jurisdiction over BNI's breach of contract and declaratory judgment claims because they present novel and complex issues of English law. BNI's English law credit derivative claims do not belong in front of this Court.

9

BNI's declaratory judgment claim without prejudice "to its renewal as of September 20, 2011," Opp. Br. at 32, BNI ignores the other two problems with its claim. First, the Court should decline to exercise supplemental jurisdiction under Section 1367(c) for the same reasons that it should dismiss BNI's contract claims. Second, the declaratory judgment claim asks this Court to determine the rights of the parties under an English-law-governed contract. While no one disputes that this Court is capable of considering English law, that does not mean that it should do so where there is no federal claim at all and no appropriate candidate for U.S. declaratory relief. Motion at 42-43. The Court should allow the English courts to declare any rights at issue here.

## CONCLUSION

For all the reasons set forth in the Defendants' Motion and for all the reasons set forth herein, the Plaintiff's Amended Complaint should be dismissed in its entirety. Any further attempt to amend those claims in light of the governing documents would be futile.

Dated: June 29, 2011

Respectfully submitted,

*/s/ Linda Regis-Hallinan*
Lance Croffoot-Suede
Linda Regis-Hallinan
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000 Telephone
(212) 903-9100 Facsimile
lance.croffoot-suede@linklaters.com
linda.regis-hallinan@linklaters.com

Counsel for Defendants Barclays Bank PLC and Barclays Capital Inc.

10